Our next case is First Niagara v. First Niagara I hope the other is a financial group My name is George Gottlieb, counsel for Appellant, First Niagara Insurance Brokers The opposer below, excuse me, and the appellant here is a Canadian insurance broker It's located only in Canada, it's office is in Canada, it's bank accounts are in Canada, it's real estate is in Canada But we contend that that is not the test to determine whether it has rendered services which pursuant to the Lanham Act give it a protectable service model What specifically have you done in interstate commerce in the United States? We've read the briefs, so we know your allegations, but what's your best case? It may also address that to foreign commerce, but that's also a test We have insured a company called Stewards Deliveries, which is a Canadian trucker who takes goods, commodities from Canada, drives them through eight states So we have placed insurance for him, if he had an accident on the New York State Thruway, we handled and facilitated the resolution of that claim But wouldn't you just insure your party? Yes So in other words, all of your transaction would occur in Canada? No, because If he injures someone else, he will pay them, right? You will pay your client and your client will pay the injured party? No, for example, one of his trucks hit something on the New York State Thruway. The Thruway made a claim against the insurer And the insurance company which wrote this insurance paid New York State, and that was facilitated by our client, who acted as an intermediary to help resolve the claim What does that mean? What do you mean facilitated? Well He doesn't pay the money, right? No, if there's a dispute between the insurance company and the person who's injured, let's say there's a dispute about how much the damages were, and that had to be resolved Or who's liable? What role does your client play? It brings the two parties together What does that mean? The insurance company and the party who's been damaged The Canadian insurance company Correct, and the U.S. entity whose property has been damaged, or let's say there was a So does your client deal with the, let's assume it's an American citizen who's been injured by something the Canadian company has done in the United States Yes, we definitely deal Does his lawyer deal with you? Are you the representatives of the insurance company? In the record, for example, we insure someone called Rainbow Travel, the Canadian travel agency, that arranges for travel trips between the United States and Canada One of the passengers, a U.S. resident, was injured. Their lawyer wrote to our client making a claim because of the injury Okay, but what was your role? Well, we then contacted the insurance company and filled out You contacted your client insurance company or the other person? Our client's So you're dealing with your Canadian insurance company Right, that's correct What were your dealings, what are the extent of your dealings with anyone on the other end of that in the United States? Well, we corresponded with the lawyers who made the claim We put the two into contact together The lawyers for the injured party, the U.S. lawyers for the injured party What if you say, if you have a claim, you should refer it to gentleman X sitting in an office in Ontario that works for the insurance company? Is that the extent of your involvement? That's correct, and if there's a problem resolving that, our client gets involved, like any insurance broker does, in helping resolve the problem In other words, if the insurance company wants more documentation, or if the insurance company wants an estimate Let's say there's a car that's located in the United States that was in an accident We might be asked to get a repair estimate from a garage in the United States All of these administrative details, this is what every brokerage agency does, helps facilitate And the test here is whether or not your client is engaged in activities that are potentially regulatable, that's the word, by Congress Exactly right What are the activities there that are potentially regulatable? Congress could say, for every Canadian car that comes into the United States, we, Congress, demand that that be insured by a United States insurance company and by a United States broker In other words, Congress has an absolute right to control, in any way it sees fit, all transportation of goods and people So that means Congress is regulating the American businesses, but by your definition, if that act of Congress would be putting your client in foreign commerce Then that means everyone in Canada is automatically in foreign commerce, everybody in the world is automatically in foreign commerce Because the Congress could arguably say, nobody in America can deal with anybody on the outside Does just that potential make everything else in the universe engaged in foreign commerce? Well, Congress has said, your honor, that United States citizens going to Cuba can only buy a certain amount of goods So Congress can regulate trucks running from Canada to the United States And they can regulate travel services running between Canada and the United States This is not any theoretical issue, this is commerce Let's say you deal with, you're a manufacturer of garments, women's clothes And so because Congress, in that situation, I guess you could arguably say that Congress could legislate and say that you can't bring those goods into the United States That means that every single clothing dealer and manufacturer across the universe is also automatically engaged in foreign commerce Because there's the potential there for Congress to regulate Americans so that there's an ultimate effect on everybody else in the universe I'm not going quite that far, I'm saying that those clothing manufacturers who actually bring clothes into the United States That activity can be regulated by Congress For example, Congress has statutes about labeling and foreign clothing coming into the United States There are duties that are charged on everything that comes in So I'm saying all of this Canadian US activity can be regulated by Congress And our client who gets insurance for this activity coming from Canada into the United States can also be regulated by Congress Don't you also have people in the United States who are coming to Canada who avail themselves of the services of your client? Yes, certainly, and in the record there are many US residents who have availed themselves of our services For example, if a US resident has a seasonal residence in Canada They would contact our client, either directly or through a US broker and say, insure our seasonal dwelling in Canada Now let's say an accident happened at that Canadian home and the residents were in the United States Well then there would be correspondence if it was a payment of a check that would come from Canada to the United States So someone runs a restaurant in London and one American tourist who's in London eats at the restaurant And they make reservations at the restaurant while they're still in the United States Is that restaurant in London engaged in foreign commerce? Well I would say that's really like the mother's case, which is one of the cases that's been cited I'm not sure that that would be regulated by Congress, but here there's a major difference Which is that the goods and vehicles are actually running from Canada to the United States No, no, no, am I misunderstood? I thought Judge Clevenger was asking about the broker deal Where it's American citizens, but whatever they've insured is located in Canada I thought that's what we were talking about I mean, all of us travel, many of us take out travel insurance while we're in the United States No, let's talk about when an American owns a home in Canada And I thought that was one of the arguments that you had, because your client engages in this broker activity So the property is in Canada, why is that different than a restaurant in London? And why, you know, if we say your client is engaged in foreign commerce, why is not that restaurant owner in London engaged in foreign commerce as well? Because the difference is that, first of all, money transpires from the United States to Canada When that United States resident pays an insurance bill, he's sending it to Canada So there's a direct transaction What happens if you pay your hotel bill in London after you get back? You wire transfer the money to pay for the hotel bill? Well, that's very much like the International Bank case, where if there's advertising that reaches the United States Let's say there's no advertising I'm going to London, I make a reservation at a restaurant there When I get back, I didn't have any money with me, I didn't have my charge card When I come back, I send the restaurant to check If the transaction takes place completely in London In other words, you arrive in London, you make your reservation No, let's say I make my reservation from here I make my reservation at this restaurant in London And then when I come back, or I pay him there I say, you know, I don't want to take care of it there, here's my money I think that is activities which could be regulated by Congress Congress could control What are the activities? We're talking about the restaurant here Is that restaurant engaged in foreign commerce? No, I don't think so Okay, then why is that different than your client with respect to the examples you were given Which is that he insures homes owned by American citizens But that are located in Canada Because if you go to London and have a meal there Essentially the service is rendered completely in the foreign country in London You eat there and essentially you're finished Here, there are continuous monetary transactions And paperwork transactions and telephone transactions Why? Only if there's a claim paid Okay, so what if I go to the restaurant in London and I develop food poisoning I mean, you know, so there's a potential for some continuous contact after that You know, there's a basic theoretical and conceptual difference between insurance services Which are continuous, which always involve transactions by telephone By paperwork, by money going from one country to the other Which are not really characteristic of eating in a local restaurant in London I think there's a very big difference there In other words, in a transaction with a resident in Canada There'll be insurance premiums paid from the United States to Canada There'll be paperwork, there'll be telephone calls There's a continuous activity which could be regulated by Congress And in fact, Congress has regulated insurance in many, many instances Mr. Gottlieb, the board seemed to think that part of the problem here was that The activities that your client has that supposedly connect you up to interstate or foreign commerce Were de minimis, merely incidental I didn't quite understand what they meant by de minimis Is there any evidence in the record about how much money's involved? I mean, for example, on an annual basis How many dollars are involved in the part of trade that you contend is either interstate or foreign? There's no direct evidence, but even that evidence would be very difficult to ascertain Because, for example, I think our client insures about 900 automobiles And all of those automobiles are covered when they come into the United States It may not be a dollar amount, some form of quantification Because I wasn't exactly sure where this de minimis notion came from In Commerce Clause cases, just a dab will do you Typically, from the point of view of whether the Congress has the authority to regulate Because they say that there could be potentially more than is involved in a particular case But it would seem to me that if your client had only insured one person That ever drove in from Canada here And you only had one person that had ever come and wanted to get their home in Canada insured That a de minimis test might make sense Well, I think, Your Honor, de minimis and foreign commerce don't really work together Because I think Congress could regulate even one individual if it wanted to But there's really nothing in the record which supports This is something that the board below really found on its own And it's really inconsistent with them saying this is a necessary part of your services If it's a necessary part of our services to insure vehicles and goods come into the United States Then de minimis doesn't make any sense And the board also said that the services were incidental And my argument is, incidental or not, if it's a service which is rendered in commerce Then it's something which enables us to get service more effectively You wish to reserve a little of your rebuttal time? Yes, thank you very much Thank you, Mr. Gottlieb Mr. Perelman May it please the court, I'd like to directly address some of Mr. Gottlieb's arguments It's important in this case to note that Mr. Gottlieb's client is not an insurance carrier It's an insurance broker All it does is broker the policies And that makes a difference in terms of evaluating what the contents are You have an insurance broker, don't you? Yeah, I've got one too Is your insurance broker engaged in interstate commerce in the United States? In interstate commerce, I don't know of my particular broker Wouldn't you assume so? Doesn't your insurance broker get you policies from insurance companies that are in Connecticut, for example? Well, it does The person that insures your automobile, your company, where are they located? Beg your pardon? The company that writes your car insurance, not your broker, where are they located? Domicile? I deal with a company right across the board A broker A broker, but I mean, don't brokers deal with companies that are in Delaware or New York, other places? The insurance companies themselves Sure they do Right Sure they do Wouldn't you just almost concede that almost any broker in the United States that has a heady-acky business is engaged in interstate commerce? They may be Insurance is different from other businesses, however, because it's highly regulated In order to be an insurance broker, you have to be licensed Now with that, but in this particular case, the board has said there's no unlawful activity here That's right So that's off the table That's right So the Canadian company, and we know the Canadian company has activity in the United States The record is full of these letters they send to people about either the insurance that's being written to take care of the house in Canada Or the insurance that's being taken care of for the Canadian car that comes in, right? That's right And all that correspondence has got either their name or their trademark on it, lots of that in the record So those are all data points, those are all touch points in the United States, right? So why doesn't that constitute engagement in commerce in the United States? Because the way that the regulation works for insurance brokers is you have to be licensed in a particular area And we took the testimony of First Niagara Canada's expert, insurance expert And we asked him, look at all these data points that your Honor is referring to Is First Niagara Canada acting as an insurance broker in New York State? And his answer to that was no That's at page 293 of the record and that testimony was noted by the TTAB The TTAB then went on to say that not only is First Niagara Canada not acting as an insurance broker in New York State But it's not acting as an insurance broker anywhere in the United States So what? Can't they still be engaged in commerce even though they're not, quote, acting as a lawfully regulated broker? Well, it's trying to register or trying to oppose marks on the basis that it's providing insurance brokerage services in the United States We have a factual finding here by the TTAB, which is subject to the substantial evidence test That says that they are not providing insurance brokerage services in the United States What about the point we discussed earlier about de minimis activity? Now, it's true that if I ship one product across a state line, that's sufficient to prove interstate commerce for trademark purposes That might be considered de minimis If one act that has anything to do with commerce is sufficient to reserve a mark under the Trademark Act Why are we discussing de minimis at all? Well, I think we're discussing de minimis because the circuit courts that have decided the issue have said that in order to have trademark rights You have to show not a de minimis effect on commerce, but a substantial effect on commerce The Beauty case out of the Second Circuit, Beauty v. Perosa, and that was a case of an Italian restaurant Said that in order to have trademark rights, you have to show a substantial effect on commerce In the Fourth Circuit, in the Nintendo case, it's not cited in our brief, but it's 34 Fed 3rd 246 Says there has to be a significant effect Well, aren't those cases just flat wrong? Those cases are flat wrong, aren't they? Doesn't the statute say that when you're talking about commerce for purposes of the Trademark Act You're talking about the sweep of commerce to whatever the United States Congress can regulate Are you telling me that the United States Congress can only regulate substantial interstate commerce? Well, for purposes of the trademark law, every circuit court that's looked at it has said that it has to be significant or substantial But I think your honors question can be answered by referring But a single act is sufficient to give me trademark registration So doesn't that cut in the direction that Judge Klovinger is talking about? Well, I don't think when we're talking about foreign commerce If you look at the Beauty case and those from all the other circuits They say significant or substantial effect But I think I can answer the question directly by referring to what we were talking about earlier And that is, can the commerce be regulated by Congress? And again, the Second Circuit in the Beauty v. Perosa case said And I think this follows up on one of Judge Klovinger's questions You have to show that Congress can regulate the service, not the consumption or the use of that service So the fact that an American may use that Canadian service to broker a policy for a Canadian residence You don't think that Congress could enact a statute that said it's a crime for a Canadian insurance brokerage To sell car insurance for somebody coming into the United States unless it meets certain limits? I don't think Congress could regulate the activity of that Canadian company Of course, if they came into the United States Let's assume there's a pattern of cases developed where people come in from Canada Upstate New York, drive their automobiles around, have terrible accidents And it turns out that in Canada it's okay if you have $5,000 of liability insurance That's all you have to have And all these accidents produce damage well beyond that And so the Congress says we've got to somehow stop those insurance companies up in Canada That are writing this $5,000 liability policy for all these Canadians to come down and hit all of our Americans And so they say we'll go directly Congress, you know, can make it a crime for foreigners to fix prices To have a price fixing conspiracy that exists offshore so long as it has an effect in America That's the Timken case, right? So Congress, couldn't Congress say we're going to stop this by saying it'll be a federal offense For any Canadian broker of policy that doesn't have a limit of whatever the state requirement is in New York Well, I don't think they could get jurisdiction over the Canadian broker That's what extradition is for That's why you have relations with, you know, some countries will send people back to the United States When we say they violate our laws, some countries won't I mean, they certainly can regulate the consumption They can say cars can't come in here Why can't they regulate the broker? I don't think they could regulate the broker Because all the cases that talk about that talk about substantial effect Is there a difference between foreign commerce and interstate commerce in this context? In the amount of commerce that has to be regulated before it is regulatable? I think foreign commerce has to be substantial Some of the cases that have talked about interstate commerce Obviously put a lower threshold on that Foreign commerce cases, Beauty, Nintendo, Reebok out of the 9th Circuit And International Cafe out of the 11th Circuit, for example But isn't it regulatable even if it's only a single act? I don't believe that foreign commerce is because of all those cases Did I miss something in your brief? Did you have a section on all these cases that talk about substantial effect? We do Where is it in your brief? We have the Beauty case Where is it in your brief? I mean, it's important if this issue had been confronted by other circuits in the trademark context Which is what you seem to be telling me this morning And it would seem to me that this is your slam dunk winner argument And I simply didn't see it presented that way in your brief As I say, I could have missed it The substantial argument was, the Beauty case was discussed And the pages are noted in the table of authorities Which page in the brief? The Beauty case is discussed Pages 16 and 26 through 28 But the substantiality argument was raised in the reply brief by First and Abertanek So that the substantiality cases were not discussed If you look at the reply brief But wait, isn't their duty to raise the substantiality argument? That's your argument Well, it's their duty to show that they're engaged in foreign commerce Their argument was raised for the first time in the reply brief That all you had to do was have any amount of foreign commerce, the smallest amount would do The Beauty case specifically discusses that The site to that is in our brief Which is the Beauty case? That's Beauty v. Perosa It's out of the Second Circuit Beauty v. Impressa Perosa If you carry their argument to its logical extreme They broker policies, for instance, municipal insurance They broker a policy for the city of Niagara Falls, Canada And what they say is that since people visit Niagara Falls, Canada From all over the world Those people could get injured and they could make claims That may not be the strongest data point they argue It struck me that their strongest data points were The people that are coming into the United States every day to do business Repairing plants and what not Driving around carrying their insurance And they're going to facilitate any claims that arrive at that And also, Clevenger, who buys a house on a lake up in Canada Needs fire insurance and theft insurance and what not And so I can go directly to them and say Please get that insurance for me And I write a check and I send it to them In foreign commerce, if not interstate commerce And a claim develops, the house catches on fire or something And then there's a lot of correspondence going back and forth about the claim If that were happening between two states Clearly, if I have a house in Colorado And I have a broker here that gets me some insurance out there And then all of a sudden the house catches on fire or something happens to it And I've got a lot of communication and back and forth In correspondence with the people in Colorado I'm engaged in interstate commerce, I have to be, don't I? The insurance company that's doing that for me The broker who's doing all this for me Yes, but there are a lot of cases in the trademark context That talk about the fact that just because money flows between two countries Take the Linville case that came before this court That was a case involving beauty salons But can't we distinguish the beauty case on its facts? Beauty is advertising one cafe in Milan And here we do have letters going back and forth across the border Trucks driving in New York A bridge insured with work on both sides of the border There's more than one cafe in Milan There was only one cafe in Milan But in the Linville case there were a number of beauty salons Located throughout Canada It wasn't just a single beauty salon And in that case there was proof that Americans were going up there That they were going to the beauty salons Haircare products were purchased from the United States So money's going back and forth Magazines were purchased in the United States They're being transported to Canada And being used in the beauty shops So you have magazines up there And there was evidence in the case, I believe, of $25,000 a year Of US purchases at the beauty salons in Canada This court affirmed the TTAB in that case And said that that amount of transaction between the countries Was really incidental That it was not enough And that it did not support trademark rights for the Canadian entity And that's what we have here Are you saying we affirmed in Linville? Beg your pardon? We affirmed in Linville? Yes, you did, Your Honor Your citations don't show that You show it as a TTAB case We've cited all four of the decisions in Linville and Rivard I'm saying Linville TTAB, Linville TTAB If you look under Rivard It's the same case All right, thank you The Rivard case, 1998, 133, Fed Third, 1446 Is the affirmance of Linville In one case it was Linville versus Rivard In the other case it was Rivard versus Linville But that's the same case In that case the court said that That amount of interaction between the countries Money going back and forth That's not enough In this case you have a regulated Canadian brokerage firm It would be illegal for them to do business in the United States They don't pay taxes here They don't have licenses here They don't take CLE courses here They don't do any of that here And now they want, having not submitted themselves To the laws of the United States and the different states They want to come to the United States and take advantage Well the fact that they're not present Imagine a stock broker in London, England That takes orders and provides those orders To be executed on the New York Stock Exchange Electronically, it happens every day As you know it's an integrated world market And so the London Stock Broker has no office in the United States The company's never been to the United States And they decide they'd like to have more activity In the U.S. stock market So they lower their commissions Well below what any American broker's charging They don't advertise Word gets around electronically in a hurry And all of a sudden in two days The London broker is brokering a huge amount of transactions On the New York Stock Exchange Never put such foot in the United States in any way whatsoever It's just all electronic Is that broker in London engaged in either The foreign commerce of the United States or interstate commerce? They're not Because they would have to advertise in the United States In that situation in order to Why would they not? They say they don't advertise You don't If in the financial markets If you're doing something good You don't need to advertise Word gets around in a flash But under the Land Act You do have to advertise your services International Bank Corp The Fourth Circuit talked about that They said that if you have a foreign business In that case That was a casino You have to advertise your services In order to get trademark protection? Pardon? Here? I mean there's no advertising in this case, is there? There is no advertising in this case You say you have to advertise In order to be able to qualify as an opposer For having a mark in use? Absolutely We've cited the cases that say Which cases? That you have to have advertising Linville talks about the advertising in that case While there's restaurants You can have a situation in which Advertising is there And maybe somebody says Because of the advertising You're thrusting yourself into commerce Or you didn't have enough advertising Why is it a requirement? Well in the Linville case And the Mother's Restaurant case in Beauty In the first two at least The court said that That advertising was insufficient That it was just spillover advertising In the Linville case How could it be? Then why did the board write 36 pages? Why didn't it write one line? No advertising No commerce under the trade I mean The board didn't say that In any way shape or form, did it? The absence of advertising Is dispositive in this case? Just that factor? Not that factor Come back to my hypothetical And assume you're wrong That you have to show That you've been advertising Your mark Or you've been advertising your business In order to qualify as an opposer On prior use of the mark Assume you're wrong on that And go back to my London Broker hypothetical Why wouldn't that person be engaged In the foreign commerce In the United States Or interstate commerce? Because they're not building brand identity In the United States A trademark is a symbol What happens if With every single transaction Which is what happens You get a paper advice That the London Broker mails to you And it says here Dear Mr. Paul Perlman On this day we executed this trade For and on behalf of your behalf And it's got the name of the broker And the trademark Okay, well if it And so assume I have A million pieces of paper a day Are generated that have got that on That come in the United States In your honours hypothetical That mark would reach the status Of a well known or famous mark Well let's say it's not a million Let's just say it's a smaller number But it's quite a lot Aren't you telling me Aren't you conceding that That activity of my London Hypothetical London Broker Would satisfy the test Under the trademark law As being accomplished It might satisfy the test Of providing services But it would not And I know it's part of your hypothetical Your honour But the cases are quite clear That you need two things In order to have trademark protection Or to oppose a trademark Advertising and the provision of services And the advertising has to be In connection with the provision of services Any final comments Mr. Perlman No I think we have Thank you Mr. Perlman Would you please add Five minutes to Mr. Gottlieb Should he need to use them So the time will be even Thank you Judge Clevenger I think the case that you gave With the London based broker Is really exactly on point Because my colleague said Advertising is required That is not required The statute, the Lanham Act On service mark usage Says a mark may be deemed To be used in commerce And I'm reading from the act On services when it is used Or displayed In the sale or advertising Of services So if it's used That is sufficient And if it's advertised That is sufficient  First Niagara Insurance Sends a premium notice To a US resident Asking them to pay the premium It's trademark, it's trade name Is right on that premium request And in my hypothetical The advice that confirms the trade Would be using the mark In the connection of the sale Right And in addition Our client advertises On a Canadian radio station Which reaches Almost a million people In the Buffalo area And why is that important Because people in the Buffalo area Have boats On the Canadian side Of the Great Lakes So if someone in Buffalo Wanted to have insurance For his boat Which is harbored On the Canadian side of the lake And that person will know That he's going to be sailing International waters He'll come to us for insurance If there is an accident On the high seas Which is covered by this insurance There will be correspondence Between our broker My client The Canadian company And the US resident Trying to resolve this Mr. Gottlieb Is there a substantiality requirement For the amount of commerce That occurs Across international borders As opposed to A less stringent standard For interstate commerce No I've never seen a case Where any substantiality standard Has been placed on foreign commerce I believe that Congress Has the absolute right To cover one package of goods One car And Congress's power In the foreign commerce area Has been said to be greater Than in the interstate commerce area Because in interstate commerce There's a balance between The power of Congress And the rights of states So I think the Supreme Court Has said in some instances In interstate commerce There has to be Maybe we're protecting Domestic rights With our domestic trademark act And we're a little more Concerned that We protect our Domestic trademark owners And we require A little higher burden of commerce Before a foreign mark owner Can come in and Provide opposition I don't think that's correct Because under the Paris Treaty Foreign trademark owners Have virtually identical rights To US trademark owners In fact a foreign trademark owner Can get a registration Even without use Which is something That a US owner can't do The substantiality Only comes in As part of the test For interstate commerce And in fact there are Three tests for interstate commerce The Supreme Court has said Are the services involved In the channels of commerce Or the instrumentalities of commerce Or is there an effect on commerce And our position is that We are involved in all three We are involved in the channels Because we are involved in roads And air transportation We are involved in the essence Of the instrumentalities Which is the trucks that we insure Could I ask one other question Before our time expires And that is If we should agree with you That the commerce requirement Allows you into this proceeding Do we still need to send it back For a finding on likelihood of confusion Our position is that The record is so clear On the likelihood of confusion That this court But the court hasn't made A finding there, right? Correct, that is correct So we need to go back For their finding Well I think it is so clear On the record That the marks are identical The services are set out In the applicant's application But we need something to review And they haven't reviewed it yet Right, but I think the court Could decide it Without sending it back Thank you very much Thank you Mr. Copley